IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHARLES CRUM,**                                    Case No. 4:15 CV 2168

    Plaintiff,

    v.                                              Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                       MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Charles Crum ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the undersigned reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

### PROCEDURAL BACKGROUND

Plaintiff filed for benefits in May 2012, alleging disability as of June 2, 2006, due to right leg swelling, diabetes, and obesity. (Tr. 108, 121, 210-21). The claim was denied initially and upon reconsideration. (Tr. 168, 171, 177, 184). Plaintiff then filed a request for an administrative hearing. (Tr. 189). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at a hearing before an administrative law judge ("ALJ") on March 7, 2014. (Tr. 79-107). On March 28, 2014, the ALJ issued a partially favorable decision, finding Plaintiff disabled as of

September 1, 2012, but not before. (Tr. 33-50). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-32); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on October 20, 2015. (Doc. 1).

## FACTUAL BACKGROUND

**Personal and Vocational Background**

Plaintiff was born on October 9, 1975. (Tr. 108). He was 30 years old on his alleged onset date of disability. *Id.* At the time of the hearing, he was married and lived in a three-level duplex with his wife, three children, and a niece of whom he had custody. (Tr. 86). Plaintiff has an eleventh grade education (Tr. 87) and past work experience as a material handler and parts runner (Tr. 103).

**Hearing Testimony**

Plaintiff drove himself to the hearing. (Tr. 86-87). He reported he performed tasks around the house for 30 or 35 minutes before needing to take a break and elevate his foot for at least 45 minutes due to swelling in his legs and feet. (Tr. 92-93). It took him a longer amount of time than others to complete these tasks (such as dishes and vacuuming). (Tr. 96). He attended his children's sporting events and would take a chair to sit in while he watched. (Tr. 97).

He estimated he could sit for approximately 30 to 45 minutes before he would need to elevate his leg. (Tr. 92). He estimated he could stand for 60 to 90 minutes before needing to elevate his leg for 45 to 60 minutes. (Tr. 93). Plaintiff estimated he elevated his leg for three or four hours a day. (Tr. 100). He stated he could walk for approximately one or one and half blocks at a time and did so without a cane. (Tr. 93).

Plaintiff stated problems with his legs began following a 2006 work injury in which he broke his leg. (Tr. 91, 94-95). He reported experiencing fewer ulcers because he had not been on

his feet as much recently. (Tr. 95). Plaintiff complained of cellulitis which created a burning sensation in his leg. (Tr. 95-96).

>The ALJ presented the VE with the following hypothetical:
>
>Let's assume an individual who could do a range of light work. I'd like the ability [to] alternate positions about every 30 minutes to an hour as needed but remain on task; occasional pushing and pulling with the right lower extremity; occasional climbing of ramps and stairs, occasional balancing, stooping; no climbing of ropes, ladders, or scaffolds; no kneeling, crouching or crawling, occasional exposure to hazards; avoid concentrated exposure to extreme temperatures as well as pulmonary irritants.

(Tr. 103-04). The VE opined the individual would not be able to perform any of Plaintiff's past work, but could perform other work. (Tr. 103-05). The VE noted:

>*** In my opinion, your honor, I think we'd be looking here at sedentary work if [the need to alternate positions] was 30 minutes. They're really up half the time and down half the time, even though you're on task. If it's 60 minutes it's about four standing, which I would be[] looking for about five or six standing for it to be light.

(Tr. 104).

The next hypothetical involved the same individual, but he would need to elevate his leg throughout the workday to at least waist level. (Tr. 105). The VE determined the individual would be precluded from work unless the employer provided an accommodation. *Id.*

**<u>ALJ Decision</u>**

On March 28, 2014, the ALJ issued a partially favorable decision making the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. Since the alleged onset date of disability, June 2, 2006, the claimant has had the following severe impairments: history of ulceration and edema, and cellulitis of the right lower extremity; diabetes mellitus; and morbid obesity.

4. Since the alleged onset date of disability, June 2, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that prior to September 1, 2012, the date the claimant became disabled, the claimant had the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he must be permitted to alternate position every thirty to sixty minutes; he can occasionally climb ramps and stairs, balance, or stoop, but cannot climb ladders, ropes, or scaffolds, or kneel, crouch, or crawl. He must not have more than occasional exposure to hazards, and he must [avoid] concentrated exposure to heat, cold, and pulmonary irritants.

6. After careful consideration of the entire record, the undersigned finds that beginning on September 1, 2012, the claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he must be permitted to alternate position every thirty to sixty minutes; he can occasionally climb ramps and stairs, balance, or stoop, but cannot climb ladders, ropes, or scaffolds, or kneel, crouch, or crawl. He must not have more than occasional exposure to hazards, and he must [avoid] concentrated exposure to heat, cold, and pulmonary irritants. He also must be permitted to elevate his leg to waist level throughout the work day.

7. Since June 2, 2006, the claimant has been unable to perform any past relevant work.

8. Prior to the established disability onset date, the claimant was a younger individual age 18-44. The claimant's age category has not changed since the established disability onset date.

9. The claimant has a limited education and is able to communicate in English.

10. Prior to September 1, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on September 1, 2012, the claimant has not been able to transfer job skills to other occupations.

11. Prior to September 1, 2012, considering the claimant's age, education, work expe1ience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

12. Beginning on September 1, 2012, considering the claimant's age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

13. The claimant was not disabled prior to September 1, 2012, but became disabled on that date and has continued to be disabled through the date of this decision.

14. The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2011, the date last insured.

(Tr. 33-50) (internal citations omitted).

**Relevant Medical Evidence**[1]

In August 2005, Plaintiff complained of pain and swelling in his legs. (Tr. 407). Ultrasound testing was negative for deep vein thrombosis. *Id.*

Plaintiff had an appointment with Brian Williams, D.O., in October 2010 for increased swelling in his right lower extremity with "increased activity and up right [sic] activity." (Tr. 665). Dr. Williams noted Plaintiff's right leg was swollen, firm, and discolored. *Id.* Upon examination, he noted the right leg was enlarged, but Plaintiff had a fair ankle range of motion with "little apparent pain". *Id.* Dr. Williams' impression was "[v]enous insufficiency right lower extremity with chronic edema and induration." *Id.* He recommended "[s]ignificant weight loss". *Id.*

Plaintiff went to the emergency room in April 2011 due to an infection in his right leg. (Tr. 516-17). The record notes his history of lymphedema, abscess to the right leg, and diabetes (although it was noted to be "orally-controlled"). *Id.* He had a residual abscess which ruptured and was draining. *Id.* The emergency room physician opted to have Plaintiff follow up with

---

1. The ALJ found Plaintiff disabled as of September 1, 2012. Plaintiff challenges only the ALJ's RFC finding prior to September 1, 2012. (Doc. 14). As such, the Court focuses on medical evidence prior to this date. All other issues are deemed waived. *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990); *see also Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (finding issues not raised in claimant's brief waived).

wound care rather than cut or open it because his lymphedema could have caused a "healing issue" and it was "doing well with local treatment at home". *Id.* The record reveals Mostafa Rafii, M.D. had been treating Plaintiff at this time. (Tr. 538).[2]

From April 2011 through June 2011, Plaintiff received treatment at a wound care center. (Tr. 430-500). Treatment included wound debridement, antibiotic therapy, compression wraps, gel casts, and venous pump therapy. (Tr. 447, 450, 454, 457, 461, 465, 468, 471, 474, 478, 482, 486, 492). On June 7, 2011, it was noted Plaintiff "has a long history of DVT that happened many years ago but has definite incompetence in the veins and valves to the right lower extremity . . ." (Tr. 457). At different times during this period, however, the wound was "healing nicely" (Tr. 457), "much improved" (Tr. 454, 457, 461, 465, 474) and "doing very, very well." (Tr. 450). On May 31, 2011, it was noted the wound was almost closed. (Tr. 461).

From May 24, 2011, through June 21, 2011, Plaintiff was instructed to avoid standing for long periods of time and elevate his legs to heart level or above for 30 minutes three to four times daily and/or when sitting. (Tr. 431-35). On June 28, 2011, the wound was closed without complication and Plaintiff was discharged. (Tr. 430, 447). He was advised to use a compression wrap and complete lymphedema pump therapy at least two to three hours per day. *Id.*

On December 23, 2011, Plaintiff was admitted to the emergency room with chronic cellulitis after complaining of shaking, shivering, and sweating. (Tr. 510-13, 518-20). His right leg was "massively" enlarged, and it was noted he had a history of chronic stasis dermatitis in both legs. (Tr. 510, 518). Plaintiff was admitted with a diagnosis of severe cellulitis of the right lower extremity (rule out sepsis). *Id.* An ultrasound of the bilateral lower extremity revealed "[o]cclusive thrombus incidentally noted in right greater saphenous vein in proximal thigh", but

---

2. Plaintiff also saw Dr. Rafii in April 2011 and July 2011. (Tr. 539).

6

no deep vein thrombosis in either leg. (Tr. 508). Plaintiff was discharged two days later, against medical advice, because he wanted to go home for the holidays. (Tr. 529). He followed up with Dr. Rafii two days later, who advised him to elevate his legs. (Tr. 536).

**Opinion Evidence**

*Consultative Examiner*

In December 2008, at the request of the state agency, Mary-Helene Massullo, M.D., evaluated Plaintiff. (Tr. 421-28). Plaintiff reported he was able to drive, had no joint pain, and was able to "get along with [his] normal daily activities 'good.'" (Tr. 421). Plaintiff reported he weighed 490 pounds and had been told to lose weight but had not done so. *Id.* He stated he could walk two miles and descend stairs "normally". *Id.*

Upon examination, Dr. Massullo noted Plaintiff's right leg was much larger than the left and the skin was thickened and discolored. (Tr. 423). Her impression included morbid exogenous obesity (noncompliance with treatment), right leg swelling, and chronic changes to the skin of the right leg. (Tr. 424). She determined "[a]ny occupation that would require excessive walking, standing or traveling using his [bilateral lower extremities] appears . . . to be moderately compromised." *Id.* However, "[h]earing, speaking, using [bilateral upper extremities] and sitting with the possibility to get up and move about as needed does not appear to be comprmised [sic]." *Id.*

*State Agency Reviewers*

On June 28, 2012, state agency reviewer Elizabeth Das, M.D., determined Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for two hours; sit for a total of about six hours in an eight-hour workday; was limited in his right lower extremity with regard to pushing and pulling; could occasionally climb ramps/stairs;

7

never climb ladders/ropes/scaffolds; and could balance, stoop, kneel, crouch, or crawl without limitation. (Tr. 114-16, 127-29). Dr. Das also noted Plaintiff should avoid all hazards, commercial driving, and operation of heavy machinery. (Tr. 115, 128).

A second state agency reviewer, Eli Perencevich, D.O., generally concurred with these findings, with the exception that he believed Plaintiff could only occasionally balance, kneel, crouch, and crawl. (Tr. 145-46, 160-61).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

The ALJ found Plaintiff disabled as of September 1, 2012, due to the added limitation of a need to elevate his legs. Plaintiff asserts the ALJ erred in her Step Five RFC determination by failing to include this limitation prior to December 31, 2011 (the date last insured). (Doc. 14, at

9

1). Thus, the issue is whether the ALJ's additional limitation of leg elevation beginning on September 1, 2012—but not before—is supported by substantial evidence. For the reasons discussed below, the Court finds the ALJ did not provide substantial evidence for why she chose *this particular date*, and as such, remand is required.

**Step Five Analysis**

At Step Five of the sequential analysis the ALJ considers a claimant's age, education, and past work experience and makes a determination whether the individual has the RFC to perform available work in the national economy. 20 C.F.R. § 404.1520. The Commissioner must make "'a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs'." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question". *Id.*

If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

*Before September 1, 2012*

Here, Plaintiff alleges "the ALJ provides no reason why Plaintiff did not need to elevate his legs prior to December 31, 2011 [the date last insured]." (Doc. 14, at 11). However, the ALJ did provide a reason, stating: "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible prior to September 1, 2012, for the reasons explained in this decision." (Tr. 42).

Importantly, an ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

    (i) [A claimant's] daily activities;

    (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;

    (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;

    (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and

    (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. "[T]he [C]ourt may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ analyzed the record, including Plaintiff's statements, and determined that "his symptoms are not so severe as to prohibit him from performing basic work activities." (Tr. 44). To support this assertion, the ALJ discussed: (1) claimant's ability to perform activities of daily living; (2) statements regarding his impairments not supported by the medical evidence; (3) general inconsistent statements; and (4) at times noncompliance with treatment. (Tr. 44-45). She concluded that the RFC, prior to September 1, 2012, was "supported by the record as a whole." (Tr. 45).

There is some evidence to support the ALJ's determination that the record as a whole did not support Plaintiff's allegations of needing to elevate his leg prior to September 1, 2012. On many occasions doctors did not give an instruction to elevate his leg, (Tr. 424, 437, 438, 439, 440, 442, 443, 445, 447), but at other times he was instructed to elevate it. (Tr. 431-35, 536). However, leg elevation instructions appear to have been temporary, following an infection, which eventually healed without complication. (Tr. 430, 447).

The ALJ also considered and assigned "significant weight" to the opinion of the state agency reviewer, who in June 2012 did not include a limitation for a need to elevate his leg. (Tr. 46, 114-15, 127-28). *See Douglas v. Comm'r of Soc. Sec.*, 832 F. Supp.2d 813, 823-24 (S.D. Ohio 2011) ("[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.").

*After September 1, 2012*

The ALJ determined Plaintiff's allegations of a need to elevate became credible a few months later, on September 1, 2012. However, she failed to explain why she chose this date, and the significance of the date is not at all clear from the record. The Commissioner acknowledges this fact, but argues this error is harmless. *See* Doc. 15, at 12 ("Although the ALJ may not have clearly articulated the reason for selecting September 1, 2012, as the date she found that the limitation for elevating his leg was fully credible, the record evidence supported that date. Thus, any omission would be harmless."). The Commissioner does not, however, point to record evidence supporting the September 1 date.

The ALJ noted and gave "partial weight" to the opinion of treating physician Dr. Arnold dated September 14, 2012, which supports Plaintiff's allegations of a need to elevate his leg. Dr. Arnold determined Plaintiff could sit for a total of 2 to 3 hours, 30 minutes without interruption due increased pain with not being able to elevate his legs. (Tr. 584). However, in her analysis of Dr. Arnold's opinion, the ALJ did not mention his finding regarding Plaintiff's need to elevate his leg. (Tr. 46). Thus, the Court cannot speculate this opinion was the reason the ALJ concluded Plaintiff became credible in September 2012. This Court cannot engage in post hoc rationalizations. *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 192 (6th Cir. 2009). For that

13

reason, this case must be remanded for the ALJ to adequately explain and address the date on which Plaintiff became disabled.

**Treating Physician**

Plaintiff also briefly asserts the ALJ "erred by ignoring the treating physician rule, and by equating activities of daily living with medical restrictions." (Doc. 14, at 12). However, he fails to point to a medical source statement from Dr. Rafii in the record, and even so, the RFC assessment is one for the ALJ. *See* SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment."); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 727 (6th Cir. 2014) ("A doctor's conclusion that a patient is disabled from all work may be considered as well, but could 'never be entitled to controlling weight or given special significant' because it may invade the ultimate disability issue reserved to the Commissioner.") Thus, this argument is not well-taken.

## CONCLUSION

Following a review of the arguments presented, the record, and the applicable law, the Court finds the ALJ failed to adequately explain the disability onset date of September 1, 2012. As such, the Court has no choice but to reverse the Commissioner's decision and remand the case pursuant to sentence four for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/James R. Knepp II<br>
United States Magistrate Judge